IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,830

In the Matter of DAVID BEN MANDELBAUM,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed April 8, 2016. Indefinite suspension, suspended and respondent placed on no less than 2 years' supervised probation.

*Michael R. Serra*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*N. Trey Pettlon III*, of Law Office of Pettlon & Ginie, of Olathe, argued the cause, and *David Ben Mandelbaum*, respondent, argued the cause pro se.

*Per Curiam*:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, David Ben Mandelbaum, of Leawood, an attorney admitted to the practice of law in Kansas in 1987.

On April 8, 2015, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer and probation plan on May 15, 2015, and an affidavit of compliance with probation plan on February 29, 2016. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on June 2, 2015, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.8(a) (2015 Kan. Ct. R. Annot. 530) (conflict of interest); 1.8(e) (providing financial assistance to client); 1.15(a) (2015 Kan. Ct. R. Annot. 556) (safekeeping property); 1.15(d) (preserving client

1

funds); and 8.4(c) (2015 Kan. Ct. R. Annot. 672) (engaging in conduct involving misrepresentation).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"*Representation of G.F.*

"8.     The respondent represented G.F. for a number of years. In 2010, G.F. hired the respondent to represent her in a divorce action. The case settled. As a result of the settlement, the respondent received $25,000 on behalf of G.F. The respondent deposited the settlement proceeds into his trust account. G.F. requested that the respondent retain those funds on her behalf in case those funds were needed to pay a judgment in an unrelated civil action.

"9.     G.F. and the respondent entered into an oral agreement allowing the respondent to borrow against the $25,000 held in trust. The respondent did not advise G.F. to seek the advice of outside counsel. Between May 2011, and August 2011, the respondent borrowed nearly $10,000 of G.F.'s money held in trust. From time to time, the respondent provided G.F. with disbursements of her settlement proceeds. On August 25, 2011, the respondent provided G.F. with the remaining amount held in trust, including the amount he had borrowed.

"*Representation of C.H.*

"10.     C.H. retained the respondent to represent her in a worker's compensation case. The respondent and C.H. entered into a contingent fee agreement which provided that the respondent would receive a 25% fee of any settlement funds.

2

"11.     Prior to the settlement, the respondent advanced $300 to C.H. for living expenses. At the time the respondent advanced funds to C.H. for living expenses, the respondent held no funds on C.H.'s behalf.

"12.     Eventually, the case settled and the respondent deposited the settlement proceeds of $74,777.91 into his attorney trust account.

"*Representation of L.D.*

"13.     L.D. retained the respondent to represent her in two cases: a traffic case and the personal injury case. The respondent and L.D. entered into a contingency fee agreement for the personal injury case which provided that the respondent would receive a 30% fee of any settlement funds.

"14.     Prior to the settlement, the respondent advanced L.D. $186.50 so she could pay a municipal court fine in Jackson County Missouri. On November 24, 2011, the respondent advanced L.D. $300 for living expenses. At the time the respondent advanced funds to L.D., the respondent held no funds on behalf of L.D.

"15.     The respondent was able to settle the case. On February 14, 2012, the respondent received the settlement proceeds. That same day the respondent deposited the proceeds into his attorney trust account and distributed L.D.'s share to her in the amount of $5,728.01.

"*Representation of J.W.*

"16.     J.W. retained the respondent to represent him in a worker's compensation case. The respondent and J.W. entered into a contingent fee agreement which provided that the respondent would receive a 25% fee from any settlement proceeds in addition to reimbursement for case expenses.

"17.     The case settled. On August 15, 2011, the respondent deposited a settlement check on behalf of J.W. into his attorney trust account in the amount of $91,400.62. The respondent paid J.W. a total of $40,144.56. The remaining $51,256.06 of

3

the settlement proceeds, which included the respondent's fee, were left in the respondent's trust account with other clients' funds.

"*Representation of R.M. and D.M.*

"18.     R.M. and D.M. retained the respondent to set up and administer a charitable remainder trust and a charitable lead trust with funds that R.M. and D.M. received upon winning the lottery. For the respondent's attorney fee, R.M. and D.M. agreed to pay the respondent three quarters of one percent of the charitable remainder trust balance annually.

"19.     On December 22, 2011, the respondent deposited a check in the amount of $11,706.15 into his attorney trust account. The check represented the respondent's fees earned for administering the trust that year. At the time the respondent deposited the check into his attorney trust account, the fees had been earned. The respondent did not transfer the earned fees to his operating account.

"*Representation of J.L.C.*

"20.     The respondent represented J.L.C. in a variety of matters over a 20-year period. In September 2011, J.L.C. asked the respondent to assist him with purchasing a motorcycle for a friend. The respondent agreed to do so and charged J.L.C. a $200 attorney fee. J.L.C. provided the respondent with $6,260 in cash. The respondent deposited the cash into his trust account. That same day, the respondent wrote a check drawn on his attorney trust account in the amount of $11,259 for the motorcycle. At the time the respondent wrote the trust account check to pay for the motorcycle, the respondent did not hold sufficient funds on J.L.C.'s behalf to cover the cost of the motorcycle. Within 10 days, J.L.C. paid the respondent the difference.

"*Tax Problems*

"21.     The respondent failed to pay his federal and Kansas income taxes. As a result, the respondent had a significant tax debt owing both to the Internal Revenue Service (IRS) and the Kansas Department of Revenue (KDR).

4

"22.     In June 2012, the IRS and the KDR levied and removed all funds from the respondent's operating account. After the IRS and the KDR levied funds contained in his operating account, the respondent intentionally maintained personal funds in his trust account to prevent those funds from being taken by the IRS or KDR.

"23.     Commerce Bank closed the respondent's trust account. The respondent was unaware the account had been closed. After the account had been closed, the respondent continued to write checks drawn on his trust account. Three checks were returned.

"24.     Commerce Bank notified the Missouri Office of Disciplinary Counsel (ODC) that three checks drawn on the respondent's trust account after the account had been closed were returned. Thereafter, ODC performed an audit of the respondent's trust account covering the time period from August 1, 2011, through July 31, 2012.

"25.     The Missouri disciplinary authorities initiated disciplinary proceedings. In Missouri, the respondent stipulated to violating the Missouri Rules of Professional Conduct. Specifically, the respondent stipulated that he violated Rule 1.8(e), 1.15(b), 1.15(c), and 1.15(d). Thereafter, the Missouri Supreme Court indefinitely suspended the respondent's license to practice law in Missouri. The court, however, stayed the imposition of the suspension and placed the respondent on probation.

"Conclusions of Law

"26.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.8, KRPC 1.15, and KRPC 8.4, as detailed below:

"KRPC 1.8(a)

"27.     Lawyers are prohibited from entering into business transactions with clients, unless:

5

'(1)     the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client; and

'(2)     the client is advised in writing of the desirability of seeking and is given a reasonable opportunity to seek the advice of independent legal counsel on the transaction; and

'(3)     the client gives informed consent, in a writing signed by the client, to the essential terms of the transaction and the lawyer's role in the transaction, including whether the lawyer is representing the client in the transaction.'

KRPC 1.8(a). In this case, the respondent borrowed nearly $10,000 from the money held in trust on behalf of G.F. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.8(a).

"KRPC 1.8(e)

"28.     Lawyers may not provide financial assistance to a client in connection with representation, with limited exceptions:

'(1)     a lawyer may advance court costs and expenses of litigation, the repayment of which may be contingent on the outcome of the matter; and

'(2)     a lawyer representing an indigent client may pay court costs and expenses of litigation on behalf of the client.'

KRPC 1.8(e). The respondent advanced funds to C.H., L.D., and J.L.C. without satisfying the exceptions in KRPC 1.8(e). As such, the hearing panel concludes that he violated KRPC 1.8(e).

6

"KRPC 1.15(a) and (d)

"29.    Lawyers must properly safeguard their clients' property. KRPC 1.15 specifically provides that:

'(a)    A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

. . . .

'(d)    Preserving identity of funds and property of a client.

(1)    All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable accounts maintained in the State of Kansas with a federal or state chartered or licensed financial institution and insured by an agency of the federal or state government, and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(i)    Funds reasonably sufficient to pay bank charges may be deposited therein.

(ii)    Funds belonging in part to a client and in part presently or

7

potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.'

In this case, the respondent failed to properly safeguard his client's property when he commingled his funds with his client's funds. Thus, the hearing panel concludes that the respondent violated KRPC 1.15(a) and (d).

"KRPC 8.4(c)

"30.     'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when he intentionally maintained funds belonging to him in his attorney trust account in an attempt to avoid tax levies. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"American Bar Association
Standards for Imposing Lawyer Sanctions

"31.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

8

"32.     *Duty Violated*.  The respondent violated his duty to his client to refrain from engaging in conflicts of interest and to safeguard client property. The respondent also violated his duty to the legal profession and to the public to maintain his personal integrity.

"33.     *Mental State*.  The respondent knowingly violated his duties.

"34.     *Injury*.  As a result of the respondent's misconduct, the respondent caused potential injury to his clients. The hearing panel notes that while the potential for injury to his clients was great, there was no evidence of conversion of client property.

"35.     *Aggravating and Mitigating Factors*.  Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors:

"36.     *Prior Disciplinary Offenses*.  The respondent has been previously disciplined on two occasions. In 2001, the disciplinary administrator informally admonished the respondent for having violated KRPC 1.3 (diligence) and KRPC 1.4 (communication). In 2008, the disciplinary administrator informally admonished the respondent for having violated KRPC 1.7 (conflict of interest) and KRPC 1.8 (conflict of interest).

"37.     *Dishonest or Selfish Motive*.  The respondent borrowed funds held in trust on behalf of G.F. The hearing panel concludes that the respondent's motivation regarding that misconduct was motivated by selfishness. Additionally, the respondent placed earned fees in his attorney trust account in an attempt to avoid tax levies. The hearing panel concludes that such misconduct was motivated by dishonesty and selfishness. However, the respondent also advanced fees to his clients to provide financial assistance. The hearing panel finds that misconduct was not motivated by dishonesty or selfishness.

"38.     *A Pattern of Misconduct*.  Within this case, the respondent engaged in a pattern of misconduct. The respondent repeatedly advanced money to clients when he did

9

not hold funds in trust on behalf of the clients. Additionally, the respondent repeatedly commingled his funds with those of his client in his attorney trust account. Also, the respondent engaged in a pattern of misconduct, in that the 2008 discipline involved a conflict of interest. This case likewise involved a conflict of interest.

"39.     *Multiple Offenses*.  The respondent violated KRPC 1.8, KRPC 1.15, and KRPC 8.4. Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"40.     *Substantial Experience in the Practice of Law*.  The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1987. At the time of the misconduct, the respondent has been practicing law for approximately 25 years.

"41.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances:

"42.     *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct*.  While the respondent borrowed the funds held in trust on behalf of G.F., he timely repaid the funds borrowed.

"43.     *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.*  The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

"44.     *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*.  The respondent is an active and productive member of the bar of the Metropolitan Kansas City area. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

10

"45.  *Imposition of Other Penalties or Sanctions.*  The respondent has experienced other sanctions for his misconduct. The Missouri Supreme Court placed the respondent on supervised probation for the instant misconduct.

"46.  In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.12  Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

'4.32  Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

'7.2  Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation*

"47.  The disciplinary administrator recommended that the respondent's license to practice law be suspended for a period of 1 year, that the imposition of the suspension be suspended, and that the respondent be placed on supervised probation for a period of 2 years. The respondent recommended that his plan of probation be adopted.

"48.  The hearing panel has carefully considered what action needs to be taken to correct the deficiencies in the respondent's practice and to ensure that the misconduct does not recur. Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel concludes that the respondent should be allowed to continue to practice law, subject to supervision. However, the hearing panel also concludes that additional and different terms and conditions need to be added to the

11

respondent's plan of probation. Accordingly, the hearing panel unanimously recommends that the respondent be suspended from the practice of law for an indefinite period of time. The hearing panel further recommends that the Court suspend the imposition of the indefinite suspension, and place the respondent on supervised probation for a period of 2 years, subject to the following terms and conditions:

'1.     *Inventory of Cases and Clients.* The respondent shall maintain an inventory of all open cases and clients. The respondent shall update the inventory on a daily basis. The inventory shall include the client's name, the client's contact information, the client's goal, the tasks that remain to be completed, all pending deadlines, and the forum (if any) in which the matter is pending.

'2.     *Practice Supervision.* Within 30 days of receipt of this report, the respondent shall propose a new practice supervisor, to be approved by the disciplinary administrator. The new proposed practice supervisor should be an attorney who does not office share with the respondent. The respondent shall provide the practice supervisor with an updated copy of the inventory of cases and clients on a monthly basis. The respondent shall allow the practice supervisor full access to his client files, calendar, and trust account records. The respondent shall comply with all requests made by the practice supervisor. The practice supervisor shall prepare a quarterly report to the Disciplinary Administrator regarding the respondent's status on probation. The practice supervisor will be acting as an officer and an agent of the court while supervising the probation and monitoring the respondent's legal practice. As supervising attorney, the practice supervisor shall be afforded all immunities granted by Kan. Sup. Ct. R. 223 during the course of his or her supervising activities.

'3.     *Taxes.* The respondent shall develop a reasonable plan to repay all outstanding taxes, interest, and penalties. The respondent shall pay all outstanding Kansas taxes, interest, and penalties in full prior to being released from probation.

12

'4.     *Continuing Legal Education*. During each year of probation, the respondent shall complete a CLE regarding conflicts of interest. Additionally, during each year of probation, the respondent shall complete 5 hours of ethics CLE.

'5.     *Office Procedures*. Prior to appearing before the Kansas Supreme Court, the respondent shall provide the practice supervisor and the Disciplinary Administrator with written office procedures designed to monitor the status, deadlines, and court appearances of all matters in which he has undertaken representation. The respondent shall modify that procedure if directed to do so by the practice supervisor or the Disciplinary Administrator. The respondent shall follow the written office procedures.

'6.     *Audits*. Within thirty (30) days of the date of this report, the practice supervisor shall conduct an initial audit of the respondent's files and trust account to insure compliance with KRPC 1.8 and KRPC 1.15. Thereafter, every 6 months, the practice supervisor shall conduct additional audits. If the practice supervisor discovers any violations of the Kansas Rules of Professional Conduct, the practice supervisor shall include such information in his report. The practice supervisor shall provide the Disciplinary Administrator and the respondent with a copy of each audit report. The respondent shall follow all recommendations and correct all deficiencies noted in the practice supervisor's periodic audit reports.

'7.     *Continued Cooperation*. The respondent shall continue to cooperate with the Disciplinary Administrator. If the Disciplinary Administrator requests any additional information, the respondent shall timely provide such information.

'8.     *Professional Liability Insurance*. The respondent shall
continue to maintain professional liability insurance in the amounts set
by Missouri in the order of probation.

'9.     *Additional Violations*. The respondent shall not violate
the terms of his probation or the provisions of the Kansas Rules of
Professional Conduct. In the event that the respondent violates any of the
terms of probation or any of the provisions of the Kansas Rules of
Professional Conduct at any time during the probationary period, the
respondent shall immediately report such violation to the practice
supervisor and the Disciplinary Administrator. The Disciplinary
Administrator shall take immediate action directing the respondent to
show cause why the probation should not be revoked.'

"49.     Costs are assessed against the respondent in an amount to be certified by
the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the
disciplinary panel, and the arguments of the parties and determines whether violations of
KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct
must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945,
258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2015 Kan. Ct. R. Annot. 350).
Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the
truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d
610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed
an answer. Respondent was also given adequate notice of the hearing before the panel
and the hearing before this court. He filed no exceptions to the hearing panel's final

14

hearing report. With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2015 Kan. Ct. R. Annot. 369). Furthermore, the evidence before the hearing panel establishes the charged misconduct in violation of KRPC 1.8(a) (2015 Kan. Ct. R. Annot. 530) (conflict of interest); 1.8(e) (providing financial assistance to client); 1.15(a) (2015 Kan. Ct. R. Annot. 556) (safekeeping property); 1.15(d) (preserving client funds); and 8.4(c) (2015 Kan. Ct. R. Annot. 672) (engaging in conduct involving misrepresentation) by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the panel hearing, at which the respondent appeared, the office of the Disciplinary Administrator recommended that the respondent's license to practice law be suspended for a period of 1 year, that the imposition of the suspension be suspended, and that the respondent be placed on supervised probation for a period of 2 years. The respondent recommended that his plan of probation be adopted. The hearing panel recommended that the respondent be suspended from the practice of law for an indefinite period of time and that the imposition of the indefinite suspension be suspended and the respondent placed on supervised probation for a period of 2 years, subject to the terms and conditions set out in the final hearing report.

At the hearing before this court, the Disciplinary Administrator and respondent agreed with the recommendation of the hearing panel. But they further agreed any terms and conditions in his plan more severe or restrictive than those contained in the hearing panel's report should control.

We hold that respondent is to be suspended from the practice of law in the state of Kansas for an indefinite period of time and that the imposition of the indefinite

15

suspension be suspended and the respondent placed on supervised probation for a period of no less than 2 years, subject to the following terms and conditions:

1.  *Inventory of Cases and Clients.* The respondent shall maintain an inventory of all open cases and clients. The respondent shall update the inventory on a daily basis. The inventory shall include the client's name, the client's contact information, the client's goal, the tasks that remain to be completed, all pending deadlines, and the forum (if any) in which the matter is pending.

2.  *Practice Supervision.* The respondent shall continue with his current practice supervisor, providing him with an updated copy of the inventory of cases and clients on a monthly basis. The respondent shall allow the practice supervisor full access to his client files, calendar, and trust account records. The respondent shall also comply with all requests made by the practice supervisor. The practice supervisor further shall prepare a quarterly report to the Disciplinary Administrator regarding the respondent's status on probation. The practice supervisor shall continue to act as an officer and an agent of the court while supervising the probation and monitoring the respondent's legal practice. As supervising attorney, the practice supervisor shall be afforded all immunities granted by Kansas Supreme Court Rule 223 (2015 Kan. Ct. R. Annot. 420) during the course of his or her supervising activities.

3.  *Taxes.* The respondent shall develop a reasonable plan to repay all outstanding taxes, interest, and penalties. The respondent shall pay all outstanding Kansas taxes, interest, and penalties in full prior to being released from probation.

16

4. *Continuing Legal Education*. During each year of probation, the respondent shall complete a continuing legal education session regarding conflicts of interest. Additionally, during each year of probation, the respondent shall complete 5 hours of ethics continuing legal education.

5. *Office Procedures*. The respondent has stated he has provided the practice supervisor and the Disciplinary Administrator with written office procedures designed to monitor the status, deadlines, and court appearances of all matters in which he has undertaken representation. The respondent shall modify those procedures if directed to do so by the practice supervisor or the Disciplinary Administrator. The respondent shall follow the written office procedures.

6. *Audits*. Respondent has stated his trust account has been audited to insure compliance with KRPC 1.8 and KRPC 1.15. The practice supervisor shall conduct additional audits of respondent's trust account every 6 months. If the practice supervisor discovers any violations of the Kansas Rules of Professional Conduct, the practice supervisor shall include such information in his report. The practice supervisor shall provide the Disciplinary Administrator and the respondent with a copy of each audit report. The respondent shall follow all recommendations and correct all deficiencies noted in the practice supervisor's periodic audit reports.

7. *Continued Cooperation*. The respondent shall continue to cooperate with the Disciplinary Administrator. If the Disciplinary Administrator requests any additional information, the respondent shall timely provide such information.

8.     *Professional Liability Insurance*. The respondent shall continue to maintain professional liability insurance in the amounts set by Missouri in the order of probation.

9.     *Additional Violations*. The respondent shall not violate the terms of his probation or the provisions of the Kansas Rules of Professional Conduct. In the event that the respondent violates any of the terms of probation or any of the provisions of the Kansas Rules of Professional Conduct at any time during the probationary period, the respondent shall immediately report such violation to the practice supervisor and the Disciplinary Administrator. The Disciplinary Administrator shall take immediate action directing the respondent to show cause why the probation should not be revoked.

A minority of the court would impose a more severe discipline.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that David Ben Mandelbaum be and is hereby disciplined by suspension for an indefinite period of time in accordance with Supreme Court Rule 203(a)(5) (2015 Kan. Ct. R. Annot. 293).

IT IS FURTHER ORDERED that the imposition of the above suspension be stayed and that David Ben Mandelbaum be placed on supervised probation, subject to those terms and conditions set forth above for a period of no less than 2 years from the effective date of this order.

IT IS FURTHER ORDERED that, prior to the termination of probation, respondent undergo a reinstatement hearing pursuant to Kansas Supreme Court Rule 219 (2015 Kan.

18

Ct. R. Annot. 403), at which respondent shall establish compliance with the requirements set out above.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.