No. 99,076

In the Matter of PATRICK S. BISHOP, *Respondent.*

(179 P.3d 1096)

Opinion filed March 28, 2008.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause and was on the brief for the petitioner.

*Patrick S. Bishop*, respondent, argued the cause and was on the brief pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against respondent, Patrick S. Bishop, of Fort Scott, an attorney admitted to the practice of law in Kansas in 1979. A hearing panel of the Kansas Board for the Discipline of Attorneys conducted a formal hearing, as required by Kansas Supreme Court Rule 211 (2007 Kan. Ct. R. Annot. 304).

The hearing panel concluded that Bishop violated Kansas Rules of Professional Conduct (KRPC) as follows: KRPC 1.1 (2007 Kan. Ct. R. Annot. 384) (competence); KRPC 1.3 (2007 Kan. Ct. R. Annot. 398) (diligence); KRPC 1.4 (2007 Kan. Ct. R. Annot. 413) (communication); KRPC 3.2 (2007 Kan. Ct. R. Annot. 503) (expediting litigation); KRPC 8.1(b) (2007 Kan. Ct. R. Annot. 553) (bar admission and disciplinary matters); KRPC 8.4(c) and (d) (2007 Kan. Ct. R. Annot. 559) (misconduct). Additionally, Bishop was held to have violated Kansas Supreme Court Rule 207(b) (2007 Kan. Ct. R. Annot. 288) (duties of the bar and judiciary). The hearing panel unanimously recommended that Bishop be suspended from the practice of law for a period of 1 year. Bishop filed exceptions to the final hearing report pursuant to Supreme Court Rule 212 (2007 Kan. Ct. R. Annot. 317).

## Hearing Panel's Findings of Fact

Bishop practices law in Fort Scott, Kansas. David and Diana Fletcher are residents of Fort Scott, and because they were acquaintances of Bishop, they hired him in two separate matters. This

action arose out of complaints regarding Bishop's handling of those two cases; the complaints were docketed separately with the Disciplinary Administrator's office as DA9675 and DA9866.

## DA9675

On June 10, 1999, Mr. Fletcher was injured when the pickup truck he was driving was struck by another vehicle. The driver of the other vehicle ran a stop sign and was traveling at a high rate of speed. As a result of the accident, Mr. Fletcher sustained a broken bone in his hand, an injury to his elbow, an injury to his shoulder, and an injury to his back. He also incurred associated medical expenses. Mr. Fletcher's truck was damaged to an extent that exceeded the truck's value. At the time of the accident, Mr. Fletcher worked as an over-the-road driver. Because of the accident, however, Mr. Fletcher was unable to work and incurred lost wages.

Following the accident, Mr. Fletcher retained Bishop to file suit against the other driver. Mr. Fletcher paid Bishop $300 for the representation. Bishop failed to reduce the fee agreement to writing.

Two days before the statute of limitations ran on Mr. Fletcher's claim, Bishop filed a lawsuit on behalf of Mr. Fletcher in the District Court of Crawford County, Kansas. Bishop failed to obtain service of process on the defendant despite the fact that the defendant resided in Crawford County. Because Bishop failed to obtain service, the district court dismissed the case on September 13, 2001. At the hearing on the formal complaint, Bishop admitted that the liability of the other vehicle was "clear cut," and the only issue remaining was the amount of damages due Mr. Fletcher.

Bishop did not inform Mr. Fletcher of the dismissal until August 2005. From the time Bishop was retained and continuing to August 2005, Mr. Fletcher repeatedly asked Bishop for updates regarding the status of his lawsuit. Bishop responded by repeatedly providing false information regarding the status of the case. Some of the false explanations included: a trial date had been continued to a new date; the courthouse was being remodeled; the judge retired and the case was on hold until a new judge was appointed; a criminal case scheduled for trial took priority; and discovery issues had

arisen in the case when, in fact, no discovery was ever exchanged or conducted. Finally, Bishop falsely told Mr. Fletcher the case was scheduled for trial August 6, 2005. At the time Bishop made each of the statements to Mr. Fletcher, he knew the case had been dismissed and that the statements were false. Because Mr. Fletcher personally knew Bishop, he did not question the extreme delays in the case.

While representing Mr. Fletcher, Bishop took a job with the Kansas Department of Social and Rehabilitation Services as a Child Support Enforcement Agent. Bishop failed to inform Mr. Fletcher that he was closing his private practice and failed to provide his contact information. Mr. Fletcher happened to find Bishop at his office when he was packing. At that time, Bishop assured Mr. Fletcher that he would still be able to represent him as he had been granted such permission from his employer.

When Mr. Fletcher asked Bishop about his failure to inform him of his new job and address, Bishop claimed to have sent him the information in a letter. Mr. Fletcher said he never received such a letter, so Bishop promised to send Mr. Fletcher another letter with the contact information. Bishop failed to do so.

In August 2005, Bishop sent Mr. Fletcher a letter finally informing him that the case had been dismissed years before. The letter provided:

"I wanted to advise you that there will be no trial next week, or for that matter, on any other date. Unfortunately the case was dismissed some time ago as I was never able to get the defendant served with process. I apologize for misleading you. I perfectly understand if you believe that there are steps that must be taken to seek recompense for your damages.

"Under the circumstances I do not believe it would be best for us to meet as I believe it would be a rather contentious situation. I will copy my file and forward it to you."

Subsequently, Mr. Fletcher sought advice and representation from another lawyer and then filed suit against Bishop. At the time of the formal hearing, the suit remained pending, and settlement negotiations were underway.

DA9866

In the second case, Mrs. Fletcher retained Bishop to assist her in post-divorce matters by preparing and filing a Qualified Do-

mestic Relations Order (QDRO). The QDRO was to divide Mrs. Fletcher's former husband's stock and pension plans between Mrs. Fletcher and her former husband. Mrs. Fletcher paid Bishop $200 for the representation.

From 1995 to early 2006, the Fletchers asked Bishop on numerous occasions for an update on the status of the QDRO. In response to their inquiries, Bishop provided false excuses. He falsely told the Fletchers that he was working on it and also that the QDRO was in the mail. In the August 2005 letter in which he told the Fletchers of his failure to act, he stated: "I have sent another QDRO to Ennis Business Forms so hopefully Diana's matter will finally be resolved." Despite these representations, Bishop failed to complete the QDRO during the 11-year period of representing Mrs. Fletcher.

On March 12, 2006, Mrs. Fletcher filed a complaint with the Disciplinary Administrator's office. On March 29, 2006, the Disciplinary Administrator wrote to Bishop and informed him that he was required to provide a written response to the complaint within 20 days, yet Bishop provided no written response.

In January 2007, Jeffrey Chubb, the investigator appointed to investigate Mrs. Fletcher's complaint, wrote to Bishop. Chubb directed Bishop to provide a written response to the complaint and requested that he complete his client file within 30 days. Bishop still failed to provide a written response to Mrs. Fletcher's complaint.

At the formal hearing, Bishop offered to pay the fees associated with having another lawyer complete the QDRO.

### Hearing Panel's Conclusions of Law

Based upon the findings of fact, the hearing panel concluded Bishop violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 8.1(b), KRPC 8.4(c) and (d), and Supreme Court Rule 207.

KRPC 1.1 requires lawyers to provide competent representation to their clients and states that "[c]ompetent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." 2007 Kan. Ct. R. Annot. 384. Because Bishop failed to obtain service of process on the defendant

in Mr. Fletcher's case, the hearing panel concluded that Bishop failed to exercise appropriate thoroughness and the preparation reasonably necessary for the representation. The hearing panel also found that Bishop failed to competently represent Mrs. Fletcher by failing to exercise the requisite thoroughness and preparation necessary to follow through with the approval of a QDRO by the plan administrators.

Next, the hearing panel found that Bishop violated KRPC 1.3, which states: "A lawyer shall act with reasonable diligence and promptness in representing a client." 2007 Kan. Ct. R. Annot. 398. The hearing panel found that Bishop failed to provide diligent representation to both Mr. Fletcher and Mrs. Fletcher when he failed to take steps necessary to fulfill the representations. Regarding Mr. Fletcher, Bishop failed to timely obtain service of process. Liability was clearly established in that case; therefore, only the issue of damages remained. Bishop's lack of diligence led to the case's dismissal and cost Mr. Fletcher any chance to recover against the defendant.

Likewise, the hearing panel found Bishop lacked diligence in his representation of Mrs. Fletcher, whom he represented for 11 years. The hearing panel focused on the fact that Bishop never completed the QDRO.

Next, the hearing panel concluded that Bishop violated KRPC 1.4(a), which provides that "[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information." 2007 Kan. Ct. R. Annot. 413. This conclusion was based on Bishop's failure to provide the Fletchers with honest updates regarding their representations.

An attorney violates KRPC 3.2 if he or she fails to make reasonable efforts to expedite litigation consistent with the client's interests. 2007 Kan. Ct. R. Annot. 503. The hearing panel concluded that Bishop violated this rule because he failed to expedite Mr. Fletcher's personal injury litigation and that, because of this failure, the case was dismissed.

The hearing panel further concluded that Bishop violated KRPC 8.4(c), which states: "It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or

misrepresentation." 2007 Kan. Ct. R. Annot. 559. Once again, the panel focused on Bishop's misrepresentations to the Fletchers, noting there were numerous false representations that began in 1995 and continued until 2006.

The hearing panel further concluded that Bishop violated KRPC 8.4(d), which states: "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." 2007 Kan. Ct. R. Annot. 559. The hearing panel found that Bishop engaged in such misconduct when he failed to achieve service of process on the defendant in Mr. Fletcher's personal injury case.

Finally, the hearing panel concluded that Bishop violated KRPC 8.1(b) and Kansas Supreme Court Rule 207(b). KRPC 8.1(b) provides that a lawyer in connection with a disciplinary matter "shall not . . . knowingly fail to respond to a lawful demand for information from [a] . . . disciplinary authority." 2007 Kan. Ct. R. Annot. 553. Supreme Court Rule 207(b) provides:

"It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters." 2007 Kan. Ct. R. Annot. 288.

The hearing panel found that Bishop knew he was required to forward a written response to the initial complaint filed by Mrs. Fletcher, pointing out that he had done so regarding Mr. Fletcher's complaint, he had been instructed to do so in writing by the Disciplinary Administrator, and he had been instructed to do so in writing by the attorney investigator.

In deciding what discipline to recommend, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (1991), stating:

"*Duty Violated.* The Respondent violated his duty to his client to provide competent and diligent representation, the Respondent violated his duty to his client to provide adequate communication regarding the representation, and the Respondent violated his duty to his client, the public, and the legal profession to maintain his personal integrity.

"*Mental State.* The Respondent knowingly violated his duties.

"*Injury*. As a result of the Respondent's misconduct, the Respondent caused serious actual injury to his clients. Additionally, the Respondent caused actual injury to the reputation of the legal profession."

Next, the hearing panel considered the aggravating and mitigating factors which the ABA Standards identify as considerations for determining the degree of discipline to be imposed. The panel considered the following aggravating factors that may justify an increase in the degree of discipline to be imposed:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined on one occasion. On April 14, 2004, the Respondent entered into the attorney diversion program for having violated KRPC 1.1, KRPC 1.2, KRPC 1.3, and KRPC 1.4. The Respondent successfully completed the diversion.

"Dishonest or Selfish Motive. The Respondent's misconduct was motivated by dishonesty and selfishness. The Respondent repeatedly provided his clients with false information regarding the status of the representations. The Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty and selfishness.

"A Pattern of Misconduct. Included in this case are two complaints. The complaints involve similar misconduct. Additionally, the Respondent has previously been disciplined on one occasion. The previous case includes violations of the rules violated in this case. Thus, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"Multiple Offenses. The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 8.1(b), KRPC 8.4(c), KRPC 8.4(d), and Kan. Sup. Ct. R. 207(b). As such, the Respondent committed multiple offenses.

"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. The Respondent knew that he was required to provide a written response to the complaint filed by Mrs. Fletcher. The Respondent never filed such a response. The Hearing Panel, therefore, concludes that the Respondent obstructed the disciplinary proceeding.

"Vulnerability of Victim. Mr. and Mrs. Fletcher personally knew the Respondent. As a result of their acquaintance with the Respondent, Mr. and Mrs. Fletcher accepted his false explanations for the incredible delays. Thus, because they had a personal relationship with the Respondent, Mr. and Mrs. Fletcher were particularly vulnerable to the Respondent's misconduct.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 1979. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for more than 20 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"<u>Indifference to Making Restitution</u>. To date, the Respondent has made no effort to make restitution to Mr. Fletcher for the loss he suffered as a result of the Respondent's misconduct. Additionally, the Respondent has not refunded the unearned fees to Mr. and Mrs. Fletcher, in a total amount of $500.00."

The panel also identified some mitigating circumstances that may justify a reduction in the degree of discipline to be imposed:

"<u>The Present and Past Attitude of the Attorney as Shown by the Respondent's Cooperation During the Hearing and the Respondent's Acknowledgment of the Transgressions</u>. Other than failing to provide a written response to Mrs. Fletcher's complaint, the Respondent fully cooperated in the disciplinary process as exhibited by his complete acknowledgment of the misconduct.

"<u>Previous Good Character and Reputation in the Community Including any Letters from Clients, Friends, and Lawyers in Support of the Character and General Reputation of the Attorney</u>. The Respondent is an active and productive member of the bar in Fort Scott, Kansas. He enjoys the respect of his peers and clients and generally possesses a good character and reputation as evidenced by several letters received by the Hearing Panel.

"<u>Remorse</u>. At the hearing on the Formal Complaint, the Respondent expressed genuine remorse."

In addition to the above-cited factors, the hearing panel examined ABA Standard 4.42 regarding suspension after a lawyer knowingly fails to perform services for a client and causes injury or potential injury or after a lawyer engages in a pattern of neglect and causes injury or potential injury; Standard 4.62 regarding suspension after a lawyer knowingly deceives a client and causes injury or potential injury; and Standard 7.2 regarding suspension after a lawyer knowingly engages in conduct that violates a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system.

Based upon these standards, the Deputy Disciplinary Administrator recommended that Bishop be suspended from the practice of law for a period of 3 years and further recommended that Bishop not be reinstated until he has also paid restitution to the Fletchers. Bishop requested to be placed on probation.

The hearing panel found probation would not be an appropriate sanction. After carefully reviewing Bishop's plan of probation, the panel concluded it was not workable, substantial, or detailed. The panel noted Bishop failed to comply with the requirements of Su-

preme Court Rule 211 (2007 Kan. Ct. R. Annot. 304), regarding probation plans, in that he did not comply with each of the terms and conditions of the probation plan and thereby did not put the proposed plan of probation into effect prior to the hearing on the formal complaint. Additionally, observing that Bishop engaged in dishonest conduct for a number of years, the hearing panel found that dishonesty cannot be prevented by probation. Finally, it concluded that placing Bishop on probation is not in the best interests of the legal profession and the citizens of Kansas.

Based upon the findings of fact, conclusions of law, and the ABA Standards listed above, the hearing panel unanimously recommended that Bishop be suspended from the practice of law for 1 year. The hearing panel further recommended that Bishop not be reinstated until he provides written evidence to this court and to the Disciplinary Administrator that he has refunded the unearned fees to the Fletchers, and, in the event judgment is entered against Bishop in Mr. Fletcher's malpractice suit, that he provides written evidence that he has satisfied the judgment.

## Analysis

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of the KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Trester*, 285 Kan. 404, 408, 172 P.3d 31 (2007); *In re Comfort*, 284 Kan. 183, 190, 159 P.3d 1011(2007); Supreme Court Rule 211(f).

This court views the findings of fact, conclusions of law, and recommendations made by the hearing panel as advisory only, but we give the final hearing report the same dignity as a special verdict by a jury or as findings of a trial court. Therefore, the hearing panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence. When the panel's findings relate to matters about which there was conflicting testimony, this court recognizes that the panel, as the trier of fact, had the opportunity to observe the witnesses and eval-

uate their demeanor. We do not reweigh the evidence or assess the credibility of witnesses. *Comfort*, 284 Kan. at 190. Rather, this court examines any disputed findings of fact and determines whether clear and convincing evidence supports the panel's findings. If so, the findings will stand. Moreover, it is not necessary to restate the entire record to show substantial competent evidence to support the hearing panel's findings. *In re Kellogg*, 269 Kan. 143, 153, 4 P.3d 594 (2000).

After the final hearing report was issued, Bishop filed exceptions to the report. Typically, when exceptions are taken to a hearing panel report, the panel's findings are not deemed admitted, and we must determine whether substantial competent evidence supports the disputed finding. See Supreme Court Rule 212(d) (2007 Kan. Ct. R. Annot. 317). Although Bishop filed the exceptions, in his subsequent brief he abandoned most of these arguments by indicating "he chooses not to dispute the [various findings with which he had some disagreement] as they probably would not have a significant impact on the outcome one way or the other." Bishop argued only two points in his brief, even though several more exceptions had been stated in his initial filing.

Supreme Court Rule 212(e)(4) provides that a respondent who files exceptions to the final hearing report but who does not file a brief "will be deemed to have conceded that the findings of fact made by the hearing panel are supported by the evidence." (2007 Kan. Ct. R. Annot 318). This requirement is consistent with the general rule that an issue not briefed on appeal is deemed waived or abandoned. *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 859, 137 P.3d 486 (2006). Here, although Bishop filed a brief, he does not advance his arguments or provide any citation to the record to support his exceptions. We, therefore, deem all exceptions abandoned except for the two he preserved in his brief.

Neither of these two arguments relates to Case No. DA9675, the personal injury case. In fact, after noting he does not "for the most part" dispute the facts in the final hearing report, Bishop specifically admits the material facts that underlie the complaint: he represented Mr. Fletcher; he failed to obtain service on the

driver defendant; the case was dismissed; and, subsequent to the dismissal of the case, he "[misled] the complainant into believing that the case was still pending, when indeed it was not."

The two exceptions he asserts relate to Case No. DA9866, the post-divorce case. Specifically, he disputes that he was paid a retainer and that the QDRO was not completed. Regarding the retainer, Bishop admits this allegation in his answer to the supplement to the formal complaint. In addition, at the hearing on the formal complaint, Mrs. Fletcher testified that she paid Bishop $200 in 1994 to prepare the QDRO.

Regarding whether there was a completed QDRO, in his brief to the court Bishop explains he sent a proposed QDRO to the plan administrator, and the plan administrator rejected the proposed order. Bishop states he prepared a "modified one that would have undoubtedly been accepted if submitted, which it was not." He implies that having modified the QDRO he had "completed" the QDRO. This assertion is contrary to other explanations Bishop gave regarding the QDRO. In his August 2005 letter to the Fletchers, after explaining there would be no trial in the personal injury action, Bishop stated: "I have sent another QDRO to Ennis Business Forms so hopefully Diana's matter will finally be resolved." A different explanation is found in Bishop's answer to the supplement to the formal complaint in which he stated that after the first QDRO was rejected by the plan administrator he "did not prepare a corrected QDRO that would have been approved by the plan administrator." Nevertheless, even if we accept that he corrected the QDRO, we cannot accept Bishop's argument that this was a "completed" QDRO. His argument ignores reality and the potential harm Bishop's lack of action could have had; a draft QDRO tucked away in a file did nothing to protect Mrs. Fletcher's interest in her ex-husband's stock and pension plan. There is considerable evidence that Mrs. Fletcher had to consult with another attorney in order to obtain a valid, "completed" QDRO.

In regard to the two exceptions argued in Bishop's brief, we conclude clear and convincing evidence supports the hearing panel's findings of fact. Regarding other findings of the hearing panel, no exception was taken and those findings are deemed ad-

mitted (Supreme Court Rule 212[c]) and will be adopted by the court.

Before this court, Bishop does not contest the panel hearing's finding that he violated KRPC 1.1, KRPC 1.3, KRPC 1.4, KRPC 3.2, KRPC 8.1(b), and KRPC 8.4(c) and (d). Nor does he take exception to the panel's conclusion that he violated Kansas Supreme Court Rule 207(b) (2007 Kan. Ct. R. Annot. 288). We therefore find Bishop has violated these provisions.

With respect to the discipline to be imposed, the hearing panel's disciplinary recommendation is advisory only and shall not prevent the court from imposing discipline greater or lesser than that recommended by the panel or the Disciplinary Administrator. Supreme Court Rule 212(f); *In re O'Neill*, 285 Kan. 474, 483, 172 P.3d 1179 (2007).

Bishop takes exception to the hearing panel's recommendation of a 1-year suspension and requests published censure. Bishop points out that he is no longer working in private practice; he is a Child Support Enforcement Agent for the Kansas Department of Social and Rehabilitation Services. According to Bishop, his actions are monitored closely by a supervising attorney.

In support of his request for published censure, Bishop cites *In re Arbuckle*, 283 Kan. 887, 156 P.3d 668 (2007). In that disciplinary case, the respondent received published censure after his client's case was dismissed because the respondent failed to respond to discovery, a court order imposing sanctions, and a motion to dismiss. While the circumstances in *Arbuckle* share similarities with those in this case to the extent both involved a lack of diligence and a loss of a client's remedy, there are several notable distinctions. Most significantly, Bishop deceived his clients for at least a decade and there is no finding of deceptive practices in *Arbuckle*. As we have stated on several occasions, each disciplinary sanction must be based upon the specific facts and circumstances of the violations and the aggravating and mitigating circumstances presented in the case. Because each case is unique, past sanctions provide little guidance. *In re Bailey*, 268 Kan. 63, 64-65, 986 P.2d 1077 (1999).

Under the facts and circumstances of this case, censure is not an appropriate discipline. Reprimand is generally appropriate when a lawyer engages in negligent conduct that causes injury or potential injury to a client. See ABA Standards 4.43, 4.63, 7.3. Bishop's conduct was not negligent.

Rather, Bishop engaged in clearly intentional conduct that caused serious injury. Bishop knowingly failed to perform services for a client and, for years, knowingly lied about that conduct. Bishop's deceptions continued even after the complaints as seen by the varied explanations Bishop gave during the course of these proceedings. Additionally, Bishop has been disciplined once previously.

Given the facts of this case, particularly the long period of intentional deception, we conclude indefinite suspension is appropriate.

IT IS THEREFORE ORDERED that Patrick S. Bishop be and he is hereby indefinitely suspended from the practice of law in the state of Kansas, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2007 Kan. Ct. R Annot. 261).

IT IS FURTHER ORDERED that Patrick S. Bishop shall comply with Supreme Court Rule 218 (2007 Kan. Ct. R. Annot. 337) and, if respondent seeks reinstatement, he shall comply with Supreme Court Rule 219 (2007 Kan. Ct. R. Annot. 350); he shall provide written evidence of payment of Mr. Fletcher's civil judgment and of $200 to Mrs. Fletcher; he shall demonstrate that he knows, understands, and is willing to comply with the Kansas Supreme Court rules; and he shall demonstrate he is competent to engage in the active and continuous practice of law in this state.

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that respondent pay the costs of these proceedings.