IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 127,949

In the Matter of JAMES L. DANIELS,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Oral argument held January 30, 2025. Opinion filed May 16, 2025. Published censure.

*Amanda G. Voth*, Deputy Disciplinary Administrator, argued the cause, and *Gayle B. Larkin*, Disciplinary Administrator, was with her on the brief for the petitioner.

*Keith A. Cutler*, of James W. Tippin & Associates, of Kansas City, Missouri, argued the cause and was on the briefs for respondent, and *James L. Daniels*, respondent, argued the cause pro se.

PER CURIAM:  This is an attorney discipline proceeding against James L. Daniels, of Kansas City, Missouri. Daniels received his license to practice law in Kansas in October 1993.

On November 3, 2023, the Disciplinary Administrator's office filed a formal complaint against Daniels alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent answered the formal complaint on November 24, 2023. On December 14, 2023, respondent entered into a joint stipulation agreement with the Disciplinary Administrator's office.

Respondent personally appeared and was represented by counsel at the complaint hearing before the panel of the Kansas Board for Discipline of Attorneys, which was conducted on January 4, 2024. A second hearing was held on June 10, 2024, to hear

1

evidence on the respondent's revised probation plan. The Final Hearing Report was filed on July 22, 2024, finding that the respondent had violated KRPC 1.3 (diligence) (2024 Kan. S. Ct. R. at 328) and KRPC 1.4(a) and (b) (communication) (2024 Kan. S. Ct. R. at 329). The panel set forth its findings of fact and conclusions of law, along with its recommendation on disposition, the relevant portions of which are set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

"*Findings of Fact*

. . . .

"21.    The respondent represented client K.W., the complainant in this disciplinary matter, in a personal injury case.

"22.    On or about August 14, 2019, K.W. injured herself outside her doctor's office.

"23.    On September 1, 2020, the respondent and K.W. signed a contingent fee agreement in which the respondent agreed to represent K.W. in a case resulting from her injuries that occurred on August 14, 2019.

"24.    The hearing panel learned through K.W.'s formal hearing testimony that K.W. never met with the respondent in person. All of the business relating to her case was conducted online or over the phone. K.W. did not speak with the respondent much. Most of K.W.'s communication with the respondent was through his legal assistant, Kenyetta Canady.

"25.    The respondent obtained a majority of K.W.'s medical records within a month of his October 2020 request. The respondent did not attempt to contact the defendants' insurer or representatives. The respondent claims he did not contact the defendants' insurer because they had previously denied K.W.'s claim for damages prior to the respondent's representation.

2

"26.    On August 13, 2021, the respondent filed a petition in Shawnee County District Court on behalf of K.W. The petition demanded a jury trial.

"27.    According to the court's register of actions, the case was scheduled for a motion hearing on July 11, 2022, and jury trial on July 12, 2022. It appears these dates were set by the court on the same date that the Notice dated December 21, 2021, was sent to the respondent. The respondent stated he did not receive notice of these dates set by the court.

"28.    There is no record of the court conducting a case management conference, or setting any discovery, motions, or expert disclosure deadlines in the case. Neither the hearing date nor the trial date appeared on the E-Flex docket sheet available to the respondent.

"29.    After the respondent filed the petition, he did not do anything else that would be reflected within the court's record of the filed court case. Despite naming the defendants, the locations of the defendants, and the registered agents; names and addresses, the respondent did not serve them.

"30.    After the petition, the next document filed in the case was an order from the court dated December 21, 2021. The order noted that the case had 'been on file since August 13, 2021, and the file reflects no significant activity since 8-13-21.' The court stated that unless the plaintiff took 'additional steps to prosecute this case or otherwise contact the Court with an acceptable explanation for the lack of activity, it will be dismissed on January 4, 2022, without further notice.'

"31.    The respondent testified that he did not see an email from the E-Flex system notifying him that the court had filed the order warning of dismissal of K.W.'s case unless further action was taken. He did not know why he did not see the email notice, other than stating that he receives hundreds of emails.

"32.    On January 7, 2022, the court dismissed the action, and noted 'Petitioner did not respond or take other action as directed by the Court.'

3

"33.     On Friday, February 11, 2022, at 10:29 a.m., K.W. emailed the respondent and stated:

'I have phoned u many times Mr. daniels, with no response from you, nor ur office. I have things going on I needed to share, if it matters at this stage. I also am trying to inquire about the status of my case. My # . . . . Thank you.'

"34.     The respondent responded that same day at 11:01 a.m.: 'I'm out of the office. I will update you next week.'

"35.     On Tuesday, February 15, 2022, at 12:44 p.m., K.W. emailed the respondent again, and stated: 'I contacted the courts today, February 15, 2022, and was advised that my case had been dismissed. I need full disclosure of what happened, and am I able to refile, today?'

"36.     K.W. testified during the formal hearing that she felt upset when she learned after contacting the court that the respondent had not filed her petition until shortly before the statute of limitations ran out. She was also upset that the respondent had not obtained service on the defendants and the case was dismissed. K.W. noted that she didn't understand what had happened and had relied on the lawyer she hired—the respondent—to handle her case.

"37.     The respondent testified during the formal hearing that he did not have a reason for why he did not serve the defendants with the petition he filed for K.W. He said there was a lot going on and it just did not happen.

"38.     The respondent further testified that he knew that K.W.'s case was dismissed on January 7, 2022, before he received K.W.'s email, but he did not tell K.W. about the dismissal. He did not immediately notify K.W. because [he] thought that he had time to refile the case under the savings statute, although he acknowledged the savings statute may not apply because the defendants were not served. He said it was not something he intended to keep from K.W. and that he planned to tell her after he had refiled the case.

4

"39. The respondent responded to K.W.'s February 15, 2022, email at 1:24 p.m. and stated: 'I did not get the defendants served and the case was dismissed for want of prosecution. You should be able to refile any time within 6 months of January 4, 2022. Would you like me to do that?'

"40. During the formal hearing, K.W. testified that she did not want the respondent to refile her case because the trust was no longer there.

"41. After email exchanges, K.W. asked the respondent on February 16, 2022, to send her everything concerning her case.

"42. Three business days later, on February 22, 2022, K.W. emailed the respondent and let him know she had not received her file yet and asked for it again. The respondent responded five minutes later:

'[K.W.], your file will be sent to you in due course. While your case is a priority to me, there are other clients that must be served as well. I shall endeavor to have your file sent via email or by regular mail on a zip drive on or before Friday, February 25, 2022. Thank you for your indulgence.'

"43. The respondent attempted to email K.W. the file without success due to the size of the file on February 24, 2022. The respondent immediately advised K.W. that his email attempt did not go through. The respondent then sent a letter to K.W. dated February 28, 2022, which stated it included a zip drive to the case materials.

"44. Tracking information provided by the respondent indicated that delivery was initially attempted on March 2, 2022, and the item was delivered when it was picked up on March 3, 2022.

"45. K.W. was unable to find another lawyer willing to take her case after the respondent's representation ended.

5

"46.     K.W. filed a complaint with the disciplinary administrator's office, which was received on July 11, 2022.

"47.     The respondent filed a response to K.W.'s complaint, which was received by the disciplinary administrator's office August 1, 2022. In that response, the respondent stated he did not know about the Notice of Action the court had issued until after the dismissal '[d]ue to oversight.' The respondent stated that K.W. began calling his office for updates shortly after the dismissal.

"48.     K.W. testified that at times when she called the respondent's office, no one answered. K.W. said that a few times, the respondent's secretary answered and put K.W. through to another line, but the voice on the message system was not the respondent's voice. K.W. was unable to get through to the respondent. K.W. said that the last time she heard from the respondent about her case before the dismissal, he said that they were in negotiations.

"49.     The respondent noted in his response that due to the insurance company denying liability to prior counsel, there was 'never anyone to negotiate with regarding the client's claim,' and that 'a review of the court file indicates that there was never a trial setting.'

"50.     The respondent's legal assistant, Ms. Canady, testified during the formal hearing that she had around 15 phone conversations with K.W. while K.W. was the respondent's client.

"51.     Ms. Canady also testified that at the time K.W.'s case was dismissed, Ms. Canady did not receive e-flex notifications for the respondent's cases and did not know the case had been dismissed. However, by the time of the formal hearing, Ms. Canady did have access to e-flex to see the status of the respondent's cases.

"52.     Ms. Canady said that when K.W.'s case was pending, the office also did not have a case management software system.

"53.     The respondent is the only attorney in the respondent's law office and Ms. Canady is the only legal assistant.

"54.     On June 10, 2024, the hearing panel conducted further hearing on the formal complaint to receive evidence regarding the respondent's revised and second revised proposed plan of probation and the respondent's implementation of his proposed plan.

"55.     The respondent testified that since January 4, 2024, he had obtained and implemented use of a law practice management software called Clio. The respondent and Ms. Canady had undergone training on how to use the software and used the software to maintain information about each case and calendar deadlines in the respondent's cases. The software would send the respondent and Ms. Canady reminders at certain intervals set by the respondent for upcoming deadlines. The respondent testified that the software would continue sending the reminders until he indicated in the system that the task had been completed.

"56.     In addition, the respondent testified that he and Ms. Canady had started meeting regularly every fourth Thursday of the month at 2:00 p.m. to review the respondent's cases and determine whether any action should be taken on each case.

"57.     The respondent also testified that he has been communicating with his clients in criminal defense representations every 30 days at most, and in personal injury cases every 60 days at most, in writing.

"58.     On February 8, 2024, the respondent listed attorney James H. Scott to be his law practice supervisor under his revised probation plan. However, the respondent learned sometime before he filed his second revised probation plan on May 23, 2024, that Mr. Scott was no longer able to serve as practice supervisor.

"59.     The respondent testified that although he spoke with Mr. Scott about being his practice supervisor in January 2024, the respondent never sent Mr. Scott a copy of the revised proposed plan of probation. Further, between the January 4, 2024, and June

7

10, 2024, formal hearings, Mr. Scott had not been to the respondent's office and had not seen the respondent's Clio case management system. The respondent had not started implementing the probation plan prior to June 10, 2024.

"60.    In its January 10, 2024, order, the hearing panel notified the parties that the second formal hearing would be held for the panel to receive evidence and argument regarding the plan of probation and the compliance with the conditions of that plan.

"61.    When asked by the hearing panel whether he had read Supreme Court Rule 227 or the hearing panel's January 10, 2024, order, the respondent was unable to affirmatively answer, simply stating, 'I am sure I have.'

"*Conclusions of Law*

"62.    Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.3 (diligence) and KRPC 1.4(a) and (b) (communication), as detailed below.

"KRPC 1.3

"63.    Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3.

"64.    The respondent failed to diligently and promptly represent his client, K.W. The respondent filed the petition in K.W.'s case one day prior to the statute of limitations, having given no reason for this other than he had other cases requiring his attention before then.

"65.    Further, he listed the defendants' and their registered agent's addresses on the petition, but failed to take any action to serve the defendants with the petition. The respondent did not file summons in the case and did not check later to see if the defendants had been served.

8

"66.     Over four months passed with the respondent not checking the court records to determine the status of the case.

"67.     On December 21, 2021, the court filed an order noting that the case had been on file since August 13, 2021, with no significant activity since then. The court order stated that unless the plaintiff took 'additional steps to prosecute this case or otherwise contact the Court with an acceptable explanation for the lack of activity, it will be dismissed on January 4, 2022, without further notice.'

"68.     The respondent acknowledged that he received an emailed notice from the court's e-flex system of the court's order, but that he did not see the email. The respondent took no further action in the case.

"69.     On January 7, 2022, the court dismissed K.W.'s case.

"70.     Accordingly, the hearing panel concludes that the respondent violated KRPC 1.3.

"KRPC 1.4(a)

"71.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'

"72.     In this case, the respondent violated KRPC 1.4(a) when he failed to inform K.W. that:  1) he filed the personal injury case on her behalf; 2) he failed to serve the defendants with the petition; 3) the court issued the December 21, 2021, order; or 4) that K.W.'s case was dismissed. K.W found this information for herself more than five weeks after the dismissal and asked the respondent about it.

"73.     Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

9

"KRPC 1.4(b)

"74.     According to KRPC 1.4(b), '[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.'

"75.     The respondent violated KRPC 1.4(b) when he did not inform K.W. that he planned to file a petition in her case in August 2021 and did not allow K.W. to review the petition prior to filing or send K.W. a copy of the petition before or after filing.

"76.     Further, the respondent did not inform K.W. that the court issued its December 21, 2021, order and allow the client to make decisions about how to proceed under those circumstances.

"77.     Finally, the respondent did not inform K.W. that her case was dismissed on January 7, 2022, and that the respondent planned to refile the case using the savings statute as authority for the refiling.

"78.     Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(b).

"*American Bar Association
Standards for Imposing Lawyer Sanctions*

"79.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"80.     *Duty Violated*. The respondent violated his duty to his client, K.W. to communicate properly and represent her diligently.

10

"81.    *Mental State*. The respondent engaged in a pattern of neglect of his duty to his client.

"82.    *Injury*. The respondent's misconduct injured K.W. by causing unnecessary delay in her personal injury case, which ultimately led to its dismissal and K.W.'s inability to refile the case prior to the expiration of applicable deadlines to do so. The respondent's misconduct also negatively impacted K.W.'s trust of attorneys in general.

"83.    In addition to the above-cited factors in Standard 3, the hearing panel has thoroughly examined and considered the following Standards:

'4.42    Suspension is generally appropriate when:

(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

'8.2    Suspension is generally appropriate when a lawyer has been reprimanded for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

"Aggravating and Mitigating Factors

"84.    Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following with regard to aggravating factors:

11

"85.     *Prior Discipline*. The respondent has been disciplined on seven prior occasions. In 1999, the respondent received an admonition in Missouri for not paying his annual registration fee. In that same letter, the respondent was not found to have violated Missouri's equivalent of KRPC 1.3 and 1.4, but was cautioned to review those rules to avoid violation in the future. In 2000, the respondent received an admonition in Missouri for violation of Missouri's equivalent of KRPC 1.3. In 2001, the respondent was admonished in Missouri for violation of the equivalent of KRPC 1.3, 1.4, and 8.1. In 2003, the respondent was admonished in Missouri for violation of the equivalent of KRPC 1.4. In 2004 the respondent received two separate admonitions in Missouri for violations of the equivalent of KRPC 1.1, 1.4, and 8.1. In 2007, the respondent was suspended from the practice of law by the Kansas Supreme Court for one year for violation of KRPC 1.1, 1.3, 1.4, 1.15, 1.16, 3.2, 7.1, 8.1, and 8.4, as well as Supreme Court Rules 207(b) and 211(b). The respondent received a reciprocal one-year suspension in Missouri for his 2007 misconduct in Kansas, and after his reinstatement in Missouri was placed on probation for one year. The hearing panel concludes that the respondent has a substantial record of prior discipline for similar misconduct to the misconduct in this case.

"86.     *Pattern of Misconduct*. The respondent engaged in a pattern of misconduct. Not only has the respondent repeatedly engaged in misconduct involving lack of diligence and communication in the past, but the respondent consistently failed to act diligently or communicate properly with his client, K.W., in this case. The respondent failed to file K.W.'s case until immediately before the statute of limitations without a strategic or necessary reason for doing so, failed to serve the defendants with K.W.'s lawsuit, and consistently failed to communicate with K.W. about the status of her case, including its dismissal. The hearing panel concludes that this is an aggravating factor.

"87.     *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1993. The respondent was admitted to the practice of law in Missouri in 1997. At the time of the misconduct, the respondent had been practicing law for approximately 28 years. The hearing panel concludes that the respondent had substantial experience in the practice of law when the misconduct occurred and that this is an aggravating factor.

12

"88.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"89.     *Absence [of] Dishonest or Selfish Motive.* The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness. This is a mitigating factor.

"90.     *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct.* The respondent offered to refile K.W.'s lawsuit after it was dismissed. While the evidence was mixed regarding whether the savings statute or pandemic extensions would have allowed refiling, the respondent's effort to resolve the consequences of his misconduct is a mitigating factor.

"91.     *Client's Cause of Action Not Jeopardized.* The respondent asserts that the hearing panel should consider it a mitigating factor that K.W.'s cause of action was not lost and that K.W. could have refiled the petition. The hearing panel concludes that Mr. Daniels violated KRPC 1.3 (diligence) and KRCP 1.4 (communication). Mr. Daniels did notify his client of the ability to re-file her claim. However, it was only *after* Mr. Daniels was contacted repeatedly by his client for a rationale of why her case was dismissed. Mr. Daniels did not prosecute her case in a timely manner, resulting in a dismissal, and did not communicate the dismissal to his client in a timely manner. Therefore, the hearing panel concludes this is not a mitigating factor.

"92.     *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent has cooperated in the disciplinary process, as evidenced in part by his entering into a joint stipulation to certain facts and admission of exhibits during the formal hearing. The hearing panel concludes that this is a mitigating factor.

"93.    *Remoteness of Prior Disciplinary Offenses*. All of the respondent's prior disciplinary offenses occurred more than 20 years before the misconduct in this case. The hearing panel concludes that the respondent's prior misconduct is remote in time, though not in character, from the misconduct here. This is a mitigating factor.

"94.    *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent is an active and productive member of his community in Kansas City, Missouri. The respondent also enjoys the respect of his peers and his clients as shown by the in person testimony of the respondent's colleague and former client, J. Erik Dickinson, and by letters received by the hearing panel. The hearing panel concludes that this is a mitigating factor.

"*Recommendation of the Parties*

"95.    The disciplinary administrator recommended that the respondent's license be suspended for a period of 180 days.

"96.    The respondent recommended that he receive a published censure or informal admonition. The respondent also submitted a proposed plan of probation, a revised plan, and a second revised proposed plan of probation for the hearing panel's consideration if the hearing panel did not agree with his recommendation of censure or admonition.

"*Discussion*

"97.    The hearing panel notes several additional factors it considered in reaching its conclusions and recommendations.

"98.    There is substantial evidence of the respondent's previous failure to comply with diligence and communication rules. In addition, the panel heard evidence of the respondent's lack of follow through in this disciplinary case, such as his not reading Supreme Court Rule 227, not reviewing this hearing panel's January 10, 2024, order, and not implementing all of the terms of his own proposed probation plan.

14

"99.     Considering this, the hearing panel determines it is crucial, if the respondent is placed on probation, that the respondent be supervised by a practice supervisor. The hearing panel concludes that it is necessary in order to protect the public and for the respondent to be successful on probation that he be supervised.

"100.    The respondent agreed that a practice supervisor would be helpful.

"101.    Even during the approximately four months that Mr. Scott believed he would be able to serve as the respondent's practice supervisor, the respondent failed to share the probation plan with Mr. Scott, did not meet with Mr. Scott, and did not share information with Mr. Scott about his practice or new case management software. Because the respondent did not meet with Mr. Scott, Mr. Scott did not prepare any reports to submit to the disciplinary administrator's office.

"102.    While Mr. Scott's ultimate unavailability starting in May was not within the respondent's control, the respondent did not implement his proposed probation plan during the time when he had an opportunity to do so.

"103.    During his testimony on June 10, 2024, the respondent seemed to not understand the importance of having a practice supervisor or of complying with each condition of the probation plan for at least 14 days prior to the hearing.

"104.    Supreme Court Rule 227(d) states:

'A hearing panel may not recommend that the respondent be placed on probation unless the following requirements are met:

(1) the respondent complies with subsections (a) and (c) and the proposed probation plan satisfies the requirements in subsection (b);

(2) the misconduct can be cured by probation; and

15

(3) placing the respondent on probation is in the best interests of the legal profession and the public.'

The hearing panel does not recommend the respondent be placed on immediate probation because the respondent has not complied with Supreme Court Rule 227(c) and the respondent's proposed probation plan does not satisfy the requirements of Rule 227(b).

"105.   Specifically, the respondent's plan does not 'contain adequate safeguards that address the professional misconduct committed, protect the public, and ensure the respondent's compliance with the Kansas Rules of Professional Conduct, the Rules Relating to Discipline of Attorneys, and the attorney's oath of office,' and does not 'include the name of a practice supervisor if practice supervision is proposed.' Rule 227(b)(2) and (b)(3). If the respondent is placed on probation, the hearing panel concludes that a practice supervisor is essential.

"106.   Also, the respondent has not established that he 'has been complying with each condition in the probation plan for at least 14 days prior to the hearing' on June 10, 2024. Rule 227(c). Not only did the respondent not comply with his proposed probation plan prior to the formal hearing on January 4, 2024, the respondent still did not take steps to comply with his proposed probation plan after that date and before June 10, 2024, despite being notified by the hearing panel of the requirements of Rule 227 and the reason for the June 10, 2024, continued hearing.

"*Recommendation of the Hearing Panel*

"107.   Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be suspended for a period of 180 days. The hearing panel further recommends that after the respondent has served 30 days of the suspension, the remaining 150 days of the suspension be stayed, and the respondent be placed on probation for no less than one year, provided the respondent submits a proposed plan of probation that is approved by the Office of the Disciplinary Administrator."

16

In a disciplinary proceeding, the court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Spiegel*, 315 Kan. 143, 147, 504 P.3d 1057 (2022); see Supreme Court Rule 226(a)(1)(A) (2025 Kan. S. Ct. R. at 275). Clear and convincing evidence is evidence that causes the fact-finder to believe that the truth of the facts asserted is highly probable. *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020).

A finding is considered admitted if exception is not taken. When an exception is taken, the finding is typically not deemed admitted so the court must determine whether it is supported by clear and convincing evidence. *In re Hodge*, 307 Kan. 170, 209-10, 407 P.3d 613 (2017). If so, the finding will not be disturbed. The court does not reweigh conflicting evidence, assess witness credibility, or redetermine questions of fact when undertaking its factual analysis. *In re Hawver*, 300 Kan. 1023, 1038, 339 P.3d 573 (2014).

Respondent was given adequate notice of the formal complaint, to which he filed an answer. Additionally, prior to the hearing before the disciplinary panel, respondent entered into a joint agreement stipulating to certain specific facts and exhibits. After the panel issued its final hearing report, respondent filed timely exceptions. Therefore, the findings of fact and conclusions of law in the hearing panel's final report which are not contained in the parties' joint stipulation are not deemed admitted. See *Hodge*, 307 Kan. at 209-10.

Respondent's exceptions largely fall into three categories. The first category of exceptions includes supplemental facts intended to provide additional context for

17

respondent's actions. The second category of exceptions are challenges to the panel's legal analysis. The third category of exceptions are challenges to the panel's recommendation of discipline.

First, respondent argues the panel "cherry-picked" certain facts and used them out of context to support its conclusions. We disagree. The facts as presented in the parties' joint stipulation and respondent's own briefing were also used by the panel to support its finding of misconduct. The panel focused its analysis on the specific facts which support its findings of misconduct, rather than engaging in an extensive discussion of other facts which do not. By asking us to reconsider the "context" of these facts, rather than dispute the facts themselves, respondent is asking this court to reweigh evidence, something this court does not do. See *Hawver*, 300 Kan. at 1038.

Additionally, even if we were to accept respondent's arguments at face-value, the facts presented in the joint stipulation provide a sufficient basis to establish violations of KRPC 1.3 and 1.4(a) and (b). The respondent took on a client, filed a petition, and failed to serve the defendants. Respondent also failed to take any action after missing a notice from the district court that the case was going to be dismissed for inaction, resulting in the case being dismissed. Following the district court's dismissal, respondent did not inform the client regarding the status of her case until approximately five weeks later when the client approached him.

As to the second category of exceptions, respondent makes arguments which do not actually contradict the hearing panel's analysis. Instead, these arguments reference contextual facts included in the panel's report even though the panel did not directly rely on those facts to establish misconduct. For example, respondent argues that "[u]sing the factory-installed voice greeting on a telephone system is not unusual for small businesses, and it['s] certainly not a violation of KRPC 1.4." However, the panel did not state that the

18

telephone greeting was an ethical violation. As another example, respondent challenges the panel finding that respondent "did not attempt to contact the defendants' insurer." But the panel did not rely on this finding to support the rule violations.

Rather, the panel found that respondent violated KRPC 1.4(a) when:

"he failed to inform K.W. that: 1) he filed the personal injury case on her behalf; 2) he failed to serve the defendants with the petition; 3) the court issued the December 21, 2021, order; or 4) that K.W.'s case was dismissed. K.W found this information for herself more than five weeks after the dismissal and asked the respondent about it."

The panel also found that respondent violated KRPC 1.4(b) when he:

"did not inform K.W. that he planned to file a petition in her case in August 2021 and did not allow K.W. to review the petition prior to filing or send K.W. a copy of the petition before or after filing. . . . did not inform K.W. that the court issued its December 21, 2021, order and allow the client to make decisions about how to proceed under those circumstances. . . . [and] did not inform K.W. that her case was dismissed on January 7, 2022, and that the respondent planned to refile the case using the savings statute as authority for the refiling."

Respondent's exceptions to the panel's legal conclusions do not address the panel's actual analysis and for that reason we find them unpersuasive. We find ample clear and convincing evidence exists to establish that respondent violated KRPC 1.3 (diligence) and KRPC 1.4(a) and (b) (communication).

The last issue left for us to resolve is the appropriate discipline. The Disciplinary Administrator's office recommended that we suspend respondent's license to practice law for 180 days. The panel recommended that we suspend respondent's license to practice law for 180 days, but after the respondent has served 30 days of the suspension, the

19

remaining 150 days of the suspension be stayed and the respondent be placed on probation for one year. Respondent recommended that he receive a published censure or informal admonition but also submitted drafts of a probation plan for the hearing panel's consideration. This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. See *In re Biscanin*, 305 Kan. 1212, 1229, 390 P.3d 886 (2017); Supreme Court Rule 226(a)(1)(D) (2025 Kan. S. Ct. R. at 275).

Respondent raises three arguments against the panel's recommended discipline. First, he argues that the panel improperly considered his prior disciplinary history from over two decades ago to show a "pattern" of misconduct. Second, he argues that he has been in substantial compliance with his proposed probation plans and that the panel improperly relied on his lack of strict compliance as an aggravating factor. Lastly, he argues that suspension in this case is unduly harsh when considered against the backdrop of this court's precedent.

Respondent first argues that the panel erred by characterizing his seven prior disciplinary cases for similar conduct which occurred from 1999-2006 as a "pattern." He also argues that those cases are too remote in time to be considered. Respondent is partially correct. Our caselaw suggests a "pattern" may be found when misconduct is repeated within the same general time frame. *In re Barker*, 299 Kan. 158, 168, 321 P.3d 767 (2014). While there is no bright line rule which defines a "general time frame," the approximately 20-year gap between the conduct in this case and respondent's prior misconduct is certainly too remote to make the current violations part of a "pattern."

Respondent is incorrect, however, to assert that the panel erred by considering his prior discipline at all. "To aid in determining an appropriate sanction, the court generally considers the American Bar Association Standards for Imposing Lawyer Sanctions." *Hodge*, 307 Kan. at 230-31. Under the ABA's framework, one of the factors to be considered is the existence of aggravating or mitigating factors. *In re Holmes*, 307 Kan.

20

871, 899, 416 P.3d 143 (2018); see also Kansas Supreme Court Rule 226(a)(1)(C) (2025 Kan. S. Ct. R. at 275). In listing the criteria to consider when evaluating aggravating and mitigating circumstances, the ABA Standards list both "prior disciplinary offenses" and the "remoteness of prior offenses." ABA Standard 9.22(a); 9.32(m). The panel was correct to conclude that "the respondent has a substantial record of prior discipline for similar misconduct to the misconduct in this case" and to also conclude "the respondent's prior misconduct is remote in time, though not in character, from the misconduct here. This is a mitigating factor."

Next, we turn to the issues surrounding respondent's probation plans. Respondent argues that he has been in substantial compliance with the terms of his submitted probation plans, but acknowledges that he has not complied with all the terms. Specifically, respondent failed over a period of several months to work with a practice supervisor. The panel noted respondent's lack of compliance with his proposed probation plan, though did not specifically list it as a basis for either a rule violation or as an aggravating factor. In fact, the panel found that respondent's cooperation in the disciplinary process was a mitigating factor. In making its ultimate recommendation, the panel determined that respondent's lack of follow through with his probation plan would make a practice supervisor "crucial" if respondent was ultimately placed on probation.

Following a formal hearing in June 2024, the Disciplinary Administrator's office worked with respondent to develop a third revised proposed plan of probation addressing the panel's concerns. At oral argument before this court, the Disciplinary Administrator's office argued probation would be inappropriate because respondent had still not fully implemented his plan. Respondent reiterated his argument that he has been substantially complying with his plan.

Supreme Court Rule 227 governs the procedures and requirements for attorney probation. (2025 Kan. S. Ct. R. at 276). Rule 227(a) states that a respondent must file the proposed plan at least 14 days before the hearing on the formal complaint. Rule 227(c) (2025 Kan. S. Ct. R. at 276) states that a respondent "must establish" that they have been complying with "each condition" in the plan for at least 14 days prior to the hearing. Lastly, Rule 227(f)(2) states that at least 14 days before oral argument before this court, the respondent must file an affidavit describing their compliance with each condition of the proposed probation plan.

Critically missing from Rule 227 is any procedure for developing a new probation plan after the formal hearing. Rule 227(a) makes clear that Rule 227 applies to proposed probation plans which must be submitted to and reviewed by the hearing panel. The Disciplinary Administrator's office recognized this fact at oral argument, agreeing that the procedure being used was an "ad hoc thing that is not governed by any rule." We decline to approve this late-stage probation negotiation which is not contemplated by Rule 227. Because Rule 227 does not apply, we will not consider any arguments related to alleged noncompliance of Rule 227 following his formal hearing. That said, the record is clear that respondent failed to comply with "each condition" of his probation plan prior to his formal hearing, a fact he "must" have established under Rule 227(c). Therefore, we reject respondent's arguments that he substantially complied with his plan and could still be eligible for probation.

Lastly, respondent argues that suspension in this case is overly harsh. He points to our caselaw to identify other violations of KRPC 1.3 and 1.4 which resulted in published censures. But "'[b]ecause each case is unique, past sanctions provide little guidance.'" *Hodge*, 307 Kan. at 230 (quoting *In re Bishop*, 285 Kan. 1097, 1108, 179 P.3d 1096 [2008]). As previously noted, when determining an appropriate sanction, the court generally considers the ABA Standards for Imposing Lawyer Sanctions. *Hodge*, 307 Kan. at 230-31. For violations involving a lack of diligence, ABA Standard 4.42 states that

suspension is appropriate when a "lawyer knowingly fails to perform services for a client" or "engages in a pattern of neglect." ABA Standard 4.43 states that reprimand is generally appropriate when a lawyer "is negligent and does not act with reasonable diligence in representing a client."

For violations involving a lack of candor, ABA Standard 4.62 states that suspension is "appropriate when a lawyer knowingly deceives a client . . . ." ABA Standard 4.63 states that reprimand is "appropriate when a lawyer negligently fails to provide a client with accurate or complete information."

Here, we determine that respondent's failure to act with regard to K.W.'s case was a product of his negligence. Therefore, we find the appropriate discipline is published censure. A minority of the court would impose a harsher penalty.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that James L. Daniels is disciplined by published censure in accordance with Supreme Court Rule 225(a)(5) (2025 Kan. S. Ct. R. at 274) for violating KRPC 1.3 and 1.4(a) and (b).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.